BANK OF CANTON *et al. v.* NELSON.

No. 8179. JULY 25, 1931.

*E. M. McCandless,* for plaintiffs in error.

*John W. Collins* and *A. J. Henderson,* contra.

HILL, J. On its facts this case is controlled by the principles ruled in *Federal Land Bank* v. *Barron,* post, 242. Under application of these principles the judge erred in overruling the demurrer to the petition.

*Judgment reversed. All the Justices concur, except Gilbert, J., absent, and Hines, J., who dissents.*

HINES, J., dissenting. Where the purchaser assumes or covenants to discharge, as a part or as the entire consideration of land purchased by him, a prior encumbrance, without actual knowledge of superior liens, the payment of such prior encumbrance without actual notice thereof does not deprive the purchaser of the benefit thereof as against a junior lien which was of record at the time of the purchase, although the prior encumbrance was canceled of record, instead of being assigned to the purchaser. In these circumstances the holder of a junior lien or security deed was not misled to his prejudice by any act of the purchaser, since his lien was of no less value to him on account of the relief awarded to the purchaser, than when it first attached. There is no equitable ground upon which the holder of a junior lien or security deed could object to the senior lien or security deed being kept alive for the protection of the purchaser's interest. The lien of such junior lien or security deed, when given, did not attach to the entire estate of the lienor or grantor, but only attached to his equity of redemption therein. It would be inequitable and unjust in such circumstances to permit the holder of the junior lien or security deed to be paid to the exclusion of the purchaser, when the latter paid off and had canceled the senior lien or security deed for the purpose of securing a good title to the property purchased. This principle is supported by the greater number and the greater weight of the authorities. Rumpp v. Gerkens, 59 Cal. 496; Matzen v. Shaeffer, 65 Cal. 81, 3 Pac. 92; Darrough v. Herbert Craft Co. Bank, 125 Cal. 272, 57 Pac. 983; Capitol National Bank v. Holmes, 43 Colo. 154, 16 L. R. A. (N. S.) 470, 127 A. S. R. 108, 95 Pac. 314; Young v. Morgan, 89 Ill. 199; Peet v. Beers, 4 Ind. 46; Ayers v. Adams, 82 Ind. 109; Shirk v. Whitten, 131 Ind. 455, 31 N. E. 87; Hobgood v.

Shuler, 44 La. Ann. 537, 10 So. 812; Look *v.* Horn, 97 Me. 283, 54 Atl. 725; Williams *v.* Libby, 118 Me. 80, 105 Atl. 855; Prestridge *v.* Lazar, 132 Miss. 168, 95 So. 837; Barnes *v.* Mott, 64 N. Y. 397, 21 Am. R. 625; Clute *v.* Emerich, 99 N. Y. 342, 2 N. E. 6; Bank *v.* Clute, 114 N. Y. 634, 21 N. E. 1021; Bryson *v.* Myers, 1 Watts & S. (Pa.) 420; Gatewood *v.* Gatewood, 75 Vt. 407; Johnson *v.* Tootle, 14 Utah, 482, 47 Pac. 1033.

This court, as I understand it, proclaimed and followed the above principle in *Simpson* v. *Ennis,* 114 *Ga.* 202 (39 S. E. 853), where the following appeared: On June 1, 1888, Burnett conveyed to the Georgia Loan & Trust Company a described tract of land to secure an indebtedness due it. He died in the fall of 1889, without having paid the debt, or without having had the title to the property reconveyed to him. On April 30, 1890, the only heirs at law of Burnett conveyed this land to Ennis and others, for a given consideration. At that time there had been no administration of the estate of Burnett. The heirs represented to the purchasers that there were no debts against the estate, except the above debt to the trust company and the taxes due the State and county, which amounts it was agreed that the purchasers should pay from the total purchase-money of the land. Accordingly, the purchasers reserved from the total purchase-money the amount necessary to pay this debt and these taxes, and paid the difference to the heirs, who thereupon conveyed by warranty deed the entire interest in the land to the purchasers. On March 12, 1891, the purchasers paid the secured debt and taxes from the purchase-money so reserved by them, and caused the security deed to be canceled of record. An administrator was appointed for the estate of the intestate. The administrator brought suit against the purchasers, in order to recover this land for the purpose of administering the same to pay other debts of the intestate. Thereupon the purchasers brought their suit in which they sought to be subrogated to the title and rights of the holder of the security deed, and to the taxes, to the extent of the amounts paid out by them to discharge the secured debt and the taxes due on this land by the intestate at the time of his death. At that time the heirs at law from whom the purchasers bought this land were non-residents and insolvent.

In that case the purchasers did not buy the equity of redemption

which the heirs inherited from their ancestor. On the contrary they bought the entire estate for a given consideration. They deducted from this consideration the amounts necessary to pay the secured debt and the taxes, and with the portions of the purchase-money so reserved by them they paid off the secured debt and taxes. This was done by agreement between the purchasers and the heirs. This court held that in these circumstances the purchasers of this land from the heirs were entitled to be subrogated to the rights of the holder of the above security deed and to the rights of the state and county to the taxes so paid by them. In the case at bar the purchaser desired to buy from the owner the land involved in this case. The owner represented that there was only one lien against the property, which was the security deed held by the Bank of Cherokee. In order for the purchaser to get a good title, it was agreed between him and the owner and the holder of the above security deed that the purchaser should pay off said security deed, in order that he might acquire a good title to this land, and that the owner of the land would by warranty deed convey the same to the purchaser. The purchaser paid off the debt secured by the security deed, in order to get a good title to the land. The same was canceled of record, and the owner thereupon by warranty deed conveyed the land to the purchaser. It turned out afterwards that a junior security deed to this land was held by the Bank of Canton. The purchaser bought without actual knowledge of this conveyance. The seller is now insolvent, and the purchaser can not recover any damages because of the breach of his warranty of title. In these circumstances the purchaser, who paid off the debt secured by the deed from the owner to the Bank of Cherokee in order that he might get a good title to this land and especially the title of this bank under its security deed, is entitled to be subrogated to the rights of that bank, and to be paid from the proceeds of the sale of this land the amount so paid by him with interest. The junior security deed conveyed and embraced only the equity of the owner in this land. The holder thereof did not thereby acquire a lien upon the entire interest in this land. The purchaser acquired this interest by paying the debt secured by the senior security deed. The holder of the junior security deed was not injured by anything done by the purchaser. The purchaser acquired the interest of the senior security deed in this land by paying off the debt thereby

secured. It would be inequitable and unjust under these circumstances to permit the holder of the junior security deed to be paid in preference to the purchaser of the interest of the holder of the senior security deed.

It is insisted that under previous decisions the purchaser is not entitled to be subrogated to the rights of the holder of the senior security deed. *Ragan* v. *Standard Scale Co.*, 128 *Ga.* 544 (58 S. E. 31); *Brown* v. *Hooks*, 133 *Ga.* 345 (65 S. E. 780); *Citizens Mercantile Co.* v. *Easom*, 158 *Ga.* 604 (123 S. E. 883, 37 A. L. R. 378). In those cases there were no agreements, express or implied, between the owners and those seeking subrogation, by which the purchasers were to be subrogated to the rights of senior encumbrancers. Those decisions in effect held that if there had been such agreements the purchasers would be entitled to subrogation. In the instant case there was an express agreement between the purchaser and the owner and the holder of the senior security deed that the purchaser was to pay off the senior encumbrance (he having no actual notice of the junior security deed), in order to put a good title to the property purchased in him. In the decision in *Ragan* v. *Standard Scale Co.*, supra, it was stated that a purchaser of property will not be entitled to subrogation as against the holders of other encumbrances of which he had notice either actual or constructive. It is insisted that the junior security deed was of record, was constructive notice to the purchaser, and that for this reason he would not be entitled to subrogation to the rights and title of the holder of the senior security deed. This holding is contrary to the ruling in *Wilkins* v. *Gibson*, 113 *Ga.* 31 (38 S. E. 374, 84 Am. St. R. 204). It was there held that "Knowledge of the existence of an intervening encumbrance will not alone prevent the person advancing the money under an agreement of the character above referred to from claiming the right of subrogation, when the exercise of such right will not in any substantial way prejudice the rights of the intervening encumbrancer." In the decision it was said: "When the defendants, the holders of the intervening liens, took their mortgages, the lien of Richardson was in existence and superior to theirs, and of this fact they had knowledge. To substitute Gibson for Richardson would apparently place them in no worse position than they were before. . . The fact that Gibson may have known of the existence of the mortgages

of defendants, which were executed before the cancellation of the deed to Richardson, will not defeat his right to subrogation, provided, of course, he had an agreement for subrogation. If he had such an agreement, he simply stands in equity in the place of Richardson, so far as the dignity of his debt is concerned. On account of this agreement equity simply assigns this security to him." The statement in *Ragan* v. *Scale Co.,* supra, was repeated in *Benenson* v. *Evans,* 162 *Ga.* 578 (134 S. E. 441). This ruling was by a majority of the court. It likewise conflicts with the above ruling in *Wilkins* v. *Gibson,* supra, which was by a full bench and which is controlling on this subject. So I feel constrained to dissent from the opinion of the majority.